death and dismemberment policy, such as the one at issue in the instant case.

Having found that decedent Gaddy's death, attributable to driving while intoxicated, cannot be considered an "accident" under Missouri law, the Court finds no reason to address the issue of the validity of the alleged amendment by rider to the Policy excluding coverage for injury or death attributable to the insured's driving while intoxicated.

Since a condition precedent to coverage under the subject accidental death policy cannot be shown to exist as a matter of law, Defendant is entitled to summary judgment.

DAYCO PRODUCTS, INC., Plaintiff,

v.

TOTAL CONTAINMENT, INC., Defendant.

No. 99–3042–CV–S–SOW.

United States District Court, W.D. Missouri, Southern Division.

June 21, 2002.

Bruce Clifton Anderson, Daniel A. De-Vito, Edward V. Filardi, Constance S. Huttner, Douglas R. Nemec, Skadden Arps Slate Meagher & Flom, LLP, New York City, Joel K. Goldman, Brian Wade, Husch & Eppenberger, LLC, Kansas city, MO, for plaintiff.

Lawrence M. Berkowitz, Amanda M. Feldmiller, George E. Feldmiller, Neil L. Johnson, Berkowitz, Feldmiller, Stanton, Brandt, Kansas city, MO, Randolph J. Huis, Volpe & Koenig, PC, Philadelphia, PA, for defendant.

## ORDER

SCOTT O. WRIGHT, Senior District Judge.

Before the Court are plaintiff's Motion for Summary Judgment of Literal Infringement (Doc. # 128), defendant's Suggestions in Opposition, and plaintiff's Reply; defendant's Renewed Motion for Summary Judgment that Dayco's Patents Are Unenforceable Due to Inequitable Conduct (Doc. # 133), plaintiff's Suggestions in Opposition, and defendant's Reply; and defendant's Motion for Summary Judgment that Dayco's Patents Are Invalid Under 35 U.S.C. §§ 102 and 103 (Doc. # 135), plaintiff's Suggestions in Opposition, and defendant's Reply. For the reasons stated herein, plaintiff's motion is denied and defendant's motions are granted.

### I. Background

Plaintiff Dayco Products, Inc. ("Dayco") filed a Complaint in this Court alleging that defendant Total Containment, Inc. ("TCI") was infringing plaintiff's U.S. patents 5,129,686 ("the '686 patent"), 5,199,752 ("the '752 patent"), 5,297,822 ("the '822 patent"), 5,380,050 ("the '050 patent"), 5,430,929 ("the '929 patent"), and 5,486,023 ("the '023 patent"). During the discovery process, Dayco indicated that it was no longer asserting infringement of the '929 patent.

Previously, this Court conducted a *Markman* hearing, construed the claims in the patents-in-suit, and, based upon that claim construction, granted defendant TCI's motion for summary judgment based upon non-infringement on July 7, 2000. Dayco appealed this Court's order to the United States Court of Appeals for the Federal Circuit. The Federal Circuit affirmed this Court's grant of summary judgment of non-infringement of the '686 patent; however, the Federal Circuit held that under a proper claim construction, issues of material fact remained regarding infringement of the '752, '822, '050, and '023 patents. As a result, the Federal Circuit remanded the case to this Court for further proceedings.

Following the remand, each party has moved for summary judgment. Plaintiff Dayco argues that under the Federal Circuit's claim construction, Dayco is entitled to summary judgment based upon literal infringement of the patents-in-suit. Defendant TCI contends that Dayco's patents are (1) unenforceable due to inequitable conduct and (2) invalid under 35 U.S.C. §§ 102 and 103.

## II. *Standard*

A motion for summary judgment should be granted if, viewing the evidence in the light most favorable to the non-moving party, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c); *Rafos v. Outboard Marine Corp.*, 1 F.3d 707, 708 (8th Cir.1993) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). A defendant who moves for summary judgment has the burden of showing that there is no genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A plaintiff opposing a properly supported motion for summary judgment

may not rest upon the allegations of its pleadings, "but must set forth specific facts showing there is a genuine issue for trial." *Id.*

## III. *Discussion*

### A. *Defendant TCI's Motion for Summary Judgment That Dayco's Patents Are Unenforceable For Inequitable Conduct*

Defendant TCI has renewed its motion for summary judgment arguing that Dayco's patents-in-suit are unenforceable due to Dayco's inequitable conduct in the Patent and Trademark Office ("PTO"). TCI asserts that Dayco intentionally withheld material prior art and information concerning a co-pending patent application from the patent examiner. Previously, this Court had dismissed TCI's motion as moot based upon this Court's finding of non-infringement.

The undisputed material facts relevant to defendant TCI's motion for summary judgment are as follows: the patents-in-suit are directed to a hose construction, a coupling therefor, and methods of making same. Each of the remaining patents-in-suit is a division of Dayco's U.S. Patent 5,037,143. The patents-in-suit share common subject matter and all were prosecuted by the same patent attorney, Joseph V. Tassone.

The specification for the '929 patent illustrates the common subject matter of all the patents-in-suit:

As previously set forth, one of the features of this invention is to provide a uniquely formed structure on an insert means of the coupling 32 so as to uniquely interconnect the coupling 32 of this invention to the hose 31 and still provide for a fluid sealed retention between the interiors thereof in substantially the same manner as set forth in the aforementioned U.S. Patent to Sand-

ers et al., U.S.Pat. No. 5,129,686 whereby this U.S. patent is being incorporated into this disclosure by this reference thereto.

The PTO Examiner for all the patents-in-suit, except for Dayco's '929 patent, was Dave W. Arolla. The PTO Examiner for Dayco's '929 patent was Eric K. Nicholson. On June 11, 1993 Nicholson issued an Examiner's Action rejecting claims 1–22 in Dayco's application number 993,196 ("the '196 application"). Nicholson stated that these claims were being rejected "as being unpatentable over U.S. patent 3,381,981 to Wilson in view of U.S. patent 5,096,234 to Oetiker." Nicholson found that Wilson illustrated "all of the features of the present invention except the insert (1) is not radially outwardly expanded, as to claim 4 the projections (2) are not annular and as to claim 9 the coupling has internal threads not external threads."

Dayco responded to the Examiner's Action issued by Nicholson by cancelling claims 11–22, amending claim 1, and submitting arguments attempting to define over the prior art by comparison to a "prior known insert." Nicholson issued a Final Examiner's Action on December 30, 1993, rejecting claims 1–10 in Dayco's '196 application using language virtually identical to that contained in his previous rejection. On May 11, 1994, the PTO issued a Notice of Abandonment of Dayco's '196 application as a result of Dayco's express abandonment of the application. Then, on October 31, 1994, Nicholson issued an Examiner's Action rejecting claims 1–10 in Dayco's application for the '929 patent again using language virtually identical to that contained in his previous rejections.

At the time Nicholson issued his June 11 and December 30, 1993 Examiner's Actions in the '196 application, Dayco's applications for the '050 and '822 patents were pending before Examiner Arolla. Dayco filed its application for the '023 patent on November 10, 1994 and it was examined by Examiner Arolla as well.

Dayco was made aware of the existence of the '981 patent to Wilson in Examiner Nicholson's Actions on the '196 application and the '929 patent; however, neither the '050, '822, nor the '023 patents show the '981 patent as a cited prior art reference. Similarly, there is no evidence in the prosecution history of the '050, '822, or '023 patents that Dayco disclosed the Wilson '981 patent to the PTO during the course of applying for these patents. There is no evidence in the prosecution history of the '822, '752, or '050 patents that Dayco advised Examiner Arolla or that Examiner Arolla was aware of the existence of the co-pending '196 application. There is no evidence in the prosecution history of the '050 or '023 patents that Dayco advised Examiner Arolla or that Examiner Arolla was aware of the existence of the co-pending application that resulted in the '929 patent.

### 1. Standard for Inequitable Conduct

█ Patent rights are granted in an *ex parte* proceeding and the candor of the patentees and agents is critical to the patent system. *Precision Instrument Mfg. Co. v. Automotive Maintenance Mach. Co.*, 324 U.S. 806, 818, 65 S.Ct. 993, 89 L.Ed. 1381 (1945); *FMC Corp. v. Manitowoc Co., Inc.*, 835 F.2d 1411, 1415 (Fed.Cir.1987). The patent applicant and the applicant's attorney owe an uncompromising duty of candor, good faith, and honesty to the PTO during the prosecution of the patent application. *Fox Industries, Inc. v. Structural Preservation Systems, Inc.*, 922 F.2d 801, 804 (Fed.Cir.1990). The duty to disclose information material to patentability has been codified in Title 37 of the Code of Federal Regulations at Section 1.56 which provides that, "Each individual associated

with the filing and prosecution of a patent application has a duty of candor and good faith in dealing with the Office, which includes a duty to disclose to the Office all information known to that individual to be material to patentability as defined in this section." Section 1.56 also states that, "The duty to disclose information exists with respect to each pending claim until the claim is cancelled or withdrawn from consideration, or the application becomes abandoned." Information is defined as material when it is not cumulative to information already of record and

(1) It establishes, by itself or in combination with other information, a prima facie case of unpatentability of a claim; or

(2) It refutes, or is inconsistent with, a position the applicant takes in:

(i) Opposing an argument of unpatentability relied on by the Office, or

(ii) Asserting an argument of unpatentability.

37 C.F.R. 1.56.

 A patent challenger seeking to establish that a patent is unenforceable based on inequitable conduct must prove by clear and convincing evidence that:

(1) The applicant withheld prior art or other material information or made a misrepresentation;

(2) The applicant knew of this undisclosed information or the misrepresentation and its materiality; and

(3) The applicant intended to mislead the PTO.

*Elk Corp. of Dallas v. GAF Bldg. Materials Corp.*, 168 F.3d 28, 30 (Fed.Cir.1999), *cert. denied*, 528 U.S. 873, 120 S.Ct. 178, 145 L.Ed.2d 150 (1999); *Halliburton Co. v. Schlumberger Technology Corp.*, 925 F.2d 1435, 1439 (Fed.Cir.1991). If the patent challenger establishes all of the elements of the defense, the patent is unenforceable

without regard to whether the claimed subject matter is patentable. *Fox Industries, Inc.*, 922 F.2d at 804.

 The patent owner may rebut the showing of inequitable conduct by showing that:

(a) the prior art was not material; (b) if the prior art was material, a showing that the applicant did not know of that art; (c) if the applicant did know of that art, a showing that the applicant did not know of its materiality; or (d) a showing that the applicant's failure to disclose the art did not result from an intent to mislead the PTO.

*Elk Corp. of Dallas*, 168 F.3d at 30.

 The patentee's intent to deceive need not be proved by direct evidence and circumstantial evidence may be used to infer an intent to mislead or deceive the PTO from the applicant's overall conduct. *Hewlett–Packard Co. v. Bausch & Lomb, Inc.*, 882 F.2d 1556, 1562 (Fed.Cir.1989), *cert. denied*, 493 U.S. 1076, 110 S.Ct. 1125, 107 L.Ed.2d 1031 (1990); *Semiconductor Energy Lab. Co., Ltd. v. Samsung Electronics Co., Ltd.*, 204 F.3d 1368, 1375 (Fed. Cir.2000), *cert. denied*, 531 U.S. 1190, 121 S.Ct. 1187, 149 L.Ed.2d 104 (2001). Intent may be inferred where the patent applicant knew, or should have known, that the information withheld would be material to the PTO's consideration of the patent application. *Critikon Inc. v. Becton Dickinson Vascular Access, Inc.*, 120 F.3d 1253, 1256 (Fed.Cir.1997) (citations omitted), *cert. denied*, 523 U.S. 1071, 118 S.Ct. 1510, 1511, 140 L.Ed.2d 665 (1998).

 The decision on inequitable conduct is a discretionary decision to be made by a judge on his or her own factual findings and it is not an issue for the jury. *Paragon Podiatry Laboratory, Inc. v. KLM Laboratories, Inc.*, 984 F.2d 1182, 1190 (Fed.Cir.1993). Where there are no

material facts in dispute, the Court can make a determination as to inequitable conduct on summary judgment. *Id.* Furthermore, once the Court has found inequitable conduct, related patents may become unenforceable if the Court determines that the inequitable conduct is severe enough and the patents are closely related to and descend from the fraudulently procured patent. *Consolidated Aluminum Corp. v. Foseco Intern. Ltd.,* 910 F.2d 804, 807 (Fed.Cir.1990).

### 2. *Withholding of Material Information from the PTO*

■ Defendant TCI contends that plaintiff Dayco withheld material information from the PTO. While the '822, '050, and '023 patents were pending before Examiner Arolla, Dayco knew that nearly identical claims had been rejected by Examiner Nicholson in the '196 application. Examiner Nicholson determined that the claims were "unpatentable over U.S. patent 3,381,981 to Wilson in view of U.S. patent 5,096,234 to Oetiker." It is undisputed that Nicholson issued multiple rejections of the claims pending in the '196 application and the claims pending in the application which resulted in the '929 patent based on the Wilson '981 patent. This resulted in substantially narrower claims being allowed in the '929 patent which Dayco has admitted are not infringed by defendant's products.

Every limitation of claim 1 of the '822 patent was included in rejected application claims 1 and 3 of the '196 application. As for the '050 patent, the only other subject matter that was not considered by Nicholson was the last limitation in claim 1 that "said projections of said insert means each having a transverse cross-sectional config-uration of a certain length that is different from the transverse cross-sectional length of each of said recesses of said inner hose." Figures 1–3 of the '981 patent show that the lengths of the projections on the insert are different than the lengths of the recesses of the inner hose. TCI's argument on this point is strengthened by the Federal Circuit's instruction that the ordinary definition of the term "different" must be utilized in interpreting the claims in the patents-in-suit. Furthermore, there is no dispute that outward expansion of a coupling insert was known.[1] This finding, in combination with other information, establishes a *prima facie* case of unpatentability of claim 1 of the '050 patent.

Claim 1 of the '023 patent includes the same limitation as claim 1 in the '050 patent with an additional limitation that "said insert means comprising a tubular metallic sleeve that has a metallic outer surface that is shaped to define said outer peripheral surface means thereof." The insert of the Wilson '981 patent coupling is disclosed as having a metallic outer surface that is shaped to define the outer peripheral surface, as shown in Figure 1. It necessarily follows that the Wilson '981 patent was material within the meaning of 37 C.F.R. § 1.56(b) to each of the '822, '050, and '023 patents.

The Wilson '981 patent is not cumulative to the prior art considered by Examiner Arolla because the Wilson '981 patent discloses all of the elements of the claimed combination in a single reference with the exception of outward radial expansion. This finding is supported by Examiner Nicholson's findings in his actions on the '196 application.

---

1. In its Suggestions in Opposition to defendant's original motion for summary judgment for inequitable conduct, plaintiff stated, "Both Wallace '041 and Vanderhoof '174 disclose a coupling which closes by means of a radially expandable insert."

The Court finds that based upon the multiple rejections of claims with identical subject matter in the '196 application and its progeny in view of the Wilson '981 patent, the Wilson '981 patent is material prior art as a matter of law. *A.B. Dick Co. v. Burroughs Corp.*, 798 F.2d 1392, 1397 (Fed.Cir.1986). Plaintiff Dayco had a duty to disclose the Wilson '981 patent to the PTO in connection with plaintiff's prosecution of the '822, '050, and '023 patents.

3. *Failure to Disclose Co–Pendency of the '196 Application and the Application That Resulted in the '929 Patent*

 An applicant also has the duty to disclose co-pending applications to the PTO. *Golden Valley Microwave Foods, Inc. v. Weaver Popcorn Co., Inc.*, 837 F.Supp. 1444, 1444 (N.D.Ind.1992), *aff'd*, 11 F.3d 1072, 1993 WL 443814 (Fed.Cir. 1993). This duty is incorporated in the Manual of Patent Examining Procedures, § 2001.06(b). This section provides that,

> The individuals covered by 37 C.F.R. § 1.56(a) have a duty to bring to the attention of the examiner, or other Office official involved with the examination of a particular application, information within their knowledge as to other co-pending United States applications which are 'material to the examination' of the application in question.

In fact, § 2001.06(b) states that such individuals "must instead bring such other applications to the attention of the examiner."

Given the common subject matter and the common inventor, information regarding the co-pending applications was material to the patents. The co-pending applications were also material to the prosecution of the '822, '050, '752, and '023 patents because they could have served as a basis for a double patenting

rejection. 35 U.S.C. §§ 101 and 103; 37 C.F.R. § 1.78; Manual of Patent Examining Procedures § 804. *See also, Akron Polymer Container Corp. v. Exxel Container, Inc.*, 1995 WL 620148 at *5, 40 USPQ2d 1265, 1269–70 (Fed.Cir.1995) (court held that co-pending applications with overlapping contents in the specification and claims are material).

4. *Dayco's Knowledge That Undisclosed Information Was Material*

Defendant TCI argues that there is clear and convincing evidence that Dayco and its patent attorney knew of the materiality of the prior art and the co-pending applications. The patents-in-suit share a common inventor and common subject matter. In addition, Dayco's patent attorney, Mr. Tassone, has practiced before the PTO for many years. Mr. Tassone was responsible for all the applications leading to the patents at issue. It was Mr. Tassone's responsibility to disclose all material information to the PTO. Mr. Tassone knew that similar claims in the '929 patent had been rejected by a different examiner based upon the Wilson '981 patent.

Mr. Tassone has stated that he knew of and intentionally withheld the Wilson '981 patent from and did not identify the co-pending application to Examiner Arolla. Close cases should be resolved by disclosure. *LaBounty Mfg, Inc. v. U.S. Intern. Trade Com'n*, 958 F.2d 1066, 1076 (Fed. Cir.1992).

The specification for the '929 patent illustrates the common subject matter of all the patents-in-suit. Furthermore, the prosecution history of the '196 application and '929 patent confirms the materiality of the Wilson '981 patent. In rejecting claims 1–22 of Dayco's '196 application, Examiner Nicholson stated:

> Claims 1–22, as best understood, are rejected under 35 U.S.C. § 103 as being

unpatentable over U.S. patent 3,381,981 to Wilson in view of U.S. patent 5,096,-234 to Oetiker. Wilson illustrates all the features of the present invention except the insert (1) is not radially outwardly expanded, as to claim 4 the projections (2) are not annular and as to claim 9 the coupling has internal threads not external threads.

After Dayco responded by canceling claims 11–22, amending claim 1, and attempting to define over the prior art rejection by comparison to a "prior known insert," Nicholson issued a Final Examiner's Action rejecting all pending claims, 1–10, in Dayco's '196 application using essentially the same language cited above.

Similarly, on October 31, 1994, Nicholson issued an Examiner's Action rejecting claims 1–10 in Dayco's application for the '929 patent using identical language to his Final Examiner's Action in the '196 application. Dayco was forced to narrow the scope of its claims in view of the Wilson '981 and Oetiker '234 rejection.

Given these facts, the Court finds that the Wilson '981 patent is material and the Wilson '981 patent should have been disclosed. It was not cumulative prior art. Dayco's conduct in withholding this material information from Examiner Arolla supports a finding of an intent to deceive. *Kingsdown Medical Consultants, Ltd. v. Hollister, Inc.*, 863 F.2d 867, 876 (Fed.Cir. 1988), *cert. denied,* 490 U.S. 1067, 109 S.Ct. 2068, 104 L.Ed.2d 633 (1989). The evidence clearly and convincingly establishes that Dayco intended to withhold the Wilson '981 patent from the PTO. Dayco's patent attorney had been informed by Examiner Nicholson during the prosecution of the '929 patent, which had pending claims nearly identical to those in the applications which resulted in the '822, '050, and '023 patents, that the Wilson '981 patent was considered to be material and

relevant prior art as it formed the basis for repeated rejections of the claims. Despite his knowledge, Dayco's patent attorney knowingly withheld this information from Examiner Arolla who was responsible for examining the '822, '050, and '023 patents. Dayco's attorney also failed to disclose the co-pendency of the '196 application with the application that resulted in the '752 patent. This co-pendant application could have been relevant to the allowance of the '752 patent claims.

In sum, this Court finds that Dayco's '752, '822, '050, and '023 patents are unenforceable due to Dayco's inequitable conduct before the PTO.

B. *Defendant's Motion for Summary Judgment That Dayco's Patents Are Invalid Under 35 U.S.C. §§ 102 and 103*

 Even if this Court had not found that Dayco's '752, '822, '050, and '023 patents are unenforceable due to Dayco's inequitable conduct, defendant TCI would be entitled to summary judgment based upon defendant's motion for summary judgment that Dayco's patents are invalid under 35 U.S.C. §§ 102 and 103. TCI argues that in light of the Federal Circuit's claim construction in this case, Dayco's patents are invalid due to anticipation and obviousness. TCI contends that the patent claims that Dayco is asserting were well known in the art of hose constructions and couplings for at least sixty years. This Court agrees.

The uncontroverted material facts relevant to defendant's motion for summary judgment are as follows: U.S. Patent 2,268,142 was issued in 1941 and assigned to Scovill Manufacturing Company. Although plaintiff disagrees, the patent clearly discloses a hose construction in which a coupling, having an outwardly expandable insert having a plurality of outwardly directed projections with recesses

therebetween, is inserted into a tubular hose having an inner peripheral surface comprised of an inner corrugated hose.

In addition, U.S. Patent 2,262,228 was issued in 1941 and U.S. Patent 2,517,606 was issued in 1950 and both were assigned to Scovill Manufacturing Company. Both of these patents are directed to hose constructions having couplings with an outwardly expandable insert having a plurality of outwardly directed projections with recesses therebetween that were inserted into a tubular hose. Scovill Manufacturing Company marketed its Model 520–H coupling, as well as other couplings for hose constructions, as early as 1962. The Model 520–H coupling has an outwardly expandable insert having a plurality of outwardly directed projections with recesses therebetween that is inserted into a tubular hose.

As early as 1976, Titeflex advertised and offered for sale a hose construction in National Petroleum News. The hose construction included a coupling having an insert with a plurality of outwardly directed projections with recesses therebetween that is inserted into a tubular hose having an inner peripheral surface comprised of an inner corrugated hose made of a polymeric material.

Each of Dayco's patents-in-suit is entitled to a priority date of September 15, 1989.

Defendant TCI argues that based upon the Federal Circuit's claim construction in this case, Dayco's patent claims cover a coupling, having an insert with projections and recesses, stuck in the end of a corrugated hose without regard to alignment or complete reception of the projections in the recesses. Defendant suggests that this was done by Scovill Manufacturing Company as early as 1941 and was well known in the field of hose construction prior to the time Dayco applied for its patents-in-suit. According to TCI, Dayco's claims, as construed by the Federal Circuit, improperly exclude the public from utilizing old, well-known technology that has long since been in the public domain.

In order to invalidate a claim as anticipated, a prior art reference must disclose every limitation of the claimed invention, either explicitly or inherently. *Telemac Cellular Corp. v. Topp Telecom, Inc.,* 247 F.3d 1316, 1327 (Fed.Cir.2001). Under the principles of inherency, if the prior art necessarily functions in accordance with, or includes, the claimed limitations, it anticipates. *Id.,* citing *MEHL/Biophile Intern. Corp. v. Milgraum,* 192 F.3d 1362, 1365 (Fed.Cir.1999).

The Court finds that every element of the asserted claims in the '752, '822, '050, and '023 patents is found in the 1941 prior art U.S. Patent 2,268,142 ("Lusher '142"). Similarly, every element of each of the asserted claims is found in the 1976 publication for the Titeflex Chemical Transfer Hose No. R292 ("Titeflex").

The '822 patent claims are directed solely to a coupling. *See Dayco Products, Inc. v. Total Containment, Inc.,* 258 F.3d 1317, 1322 (Fed.Cir.2001) (reh'g and reh'g en banc denied). The claims in the '822 patent do *not* include a hose. Every element of the claimed '822 coupling is shown in the prior art, namely the Scovill 520–H coupling.

This Court is not persuaded by plaintiff's expert affidavit attempting to distinguish plaintiff's patents-in-suit from the Lusher '142 patent. The reference and the claimed invention are easily understandable without the need for expert testimony. *See Union Carbide Corp. v. American Can Co.,* 724 F.2d 1567, 1573 (Fed.Cir.1984). There are no genuine factual disputes in this case. Lusher '142

shows a corrugated hose with corrugations extending for the length of the hose. Lusher '142 illustrates that its fitting can be utilized with a smooth bore hose as well as with a corrugated hose.

In addition, Lusher '142 clearly discloses a substantial fluid seal between the interior of the hose and the interior of the coupling, regardless of whether the inner hose is corrugated or smooth. Lusher '142, Figure 2, shows one of the projections on the insert bands bent over to force the last inner hose projection more firmly into the insert recess and the adjacent insert projection into the hose recess. Additional contact between the insert projections and hose projections is shown in Lusher '142, Figure 2, with at least one additional insert projection being aligned with a hose recess. Lusher '142 is prior art that discloses Dayco's claimed fluid seal being created by projections on the insert being "received" into the recesses formed by the corrugations in the inner hose.

The transverse cross sectional configuration of the insert projections and hose recesses being of a different length is disclosed in the Lusher '142 patent. As the Federal Circuit's claim construction of the term "different" is "not equal to," Dayco's claim limitation covers all possible constructions, except the one case where the lengths are exactly equal. As defendant argues, one of ordinary skill in the art would readily understand that making insert projections that have a transverse cross-sectional length exactly equal to the transverse cross-sectional length of the hose recesses would be impossible. Based on the standard of what is reasonably disclosed to one of ordinary skill in the art, the drawings of Lusher '142 reasonably disclose to one of ordinary skill in the art that the transverse cross-sectional lengths of the insert projections and hose recesses have to be "different."

Furthermore, Titeflex is an anticipatory reference under 35 U.S.C. § 102 for each of the asserted claims.

In sum, the Court finds that the coupling claimed in the '822 patent and the hose constructions of the '752, '050, and '023 patents were well known in the art. As a result, Dayco's asserted claims are invalid under 35 U.S.C. § 102(a) or (b). Having found that Dayco's patents are invalid under 35 U.S.C. § 102, the Court need not address the issue of obviousness.

## IV. *Conclusion*

For the reasons stated above, it is hereby

ORDERED that plaintiff's Motion for Summary Judgment of Literal Infringement (Doc. # 128) is denied. It is further

ORDERED that defendant's Renewed Motion for Summary Judgment that Dayco's Patents Are Unenforceable Due to Inequitable Conduct (Doc. # 133) is granted. It is further

ORDERED that defendant's Motion for Summary Judgment that Dayco's Patents Are Invalid Under 35 U.S.C. §§ 102 and 103 (Doc. # 135) is granted as to 35 U.S.C. § 102.