DAYCO PRODUCTS, INC.,
Plaintiff–Appellant,

v.

TOTAL CONTAINMENT, INC.,
Defendant–Appellee.

No. 02–1497.

United States Court of Appeals,
Federal Circuit.

May 23, 2003.

Constance S. Huttner, Skadden, Arps, Slate, Meagher & Flom, LLP, of New York, New York, argued for plaintiff-appellant. With her on the brief were Edward V. Filardi and Douglas R. Nemec.

Randolph J. Huis, Volpe and Koenig, P.C., of Philadelphia, Pennsylvania, argued for defendant-appellee. With him on the brief was John J. O'Malley.

Before MAYER, Chief Judge, MICHEL, and DYK, Circuit Judges.

DYK, Circuit Judge.

Dayco Products Inc. ("Dayco") appeals from the decision of the United States District Court for the Western District of Missouri granting summary judgment of unenforceability of U.S. Patent Nos. 5,199,-752 ("the '752 patent"), 5,297,822 ("the '822 patent"), 5,380,050 ("the '050 patent"), and 5,486,023 ("the '023 patent") (collectively "the patents-in-suit") and granting summary judgment of invalidity as to certain claims of those patents. *Dayco Prods., Inc. v. Total Containment, Inc.*, 218 F.Supp.2d 1129 (W.D.Mo.2002). Having granted summary judgment of unenforceability and invalidity, the district court concluded that there was no liability for infringement. Because we conclude that summary judgment for the defendant was improper and genuine issues of material fact remain to be determined, we vacate the decision of the district court and remand for trial.

## BACKGROUND

This case returns to us after a remand by this court. *Dayco Prods., Inc. v. Total Containment, Inc.*, 258 F.3d 1317, 59 USPQ2d 1489 (Fed.Cir.2001) ("*Dayco I*"). Dayco is the owner of the '752, '822, '050, and '023 patents. Total Containment, Inc. ("TCI") is accused of infringing certain claims of those patents. In the earlier appeal, we reversed the district court's grant of summary judgment of noninfringement in favor of defendant TCI with respect to the '752, '822, '050, and '023 patents because the district court had adopted an incorrect claim construction. *Id.* at 1324, 258 F.3d 1317, 59 USPQ2d at 1495. We affirmed the district court's grant of summary judgment of non-infringement with respect to U.S. Patent No. 5,129,686 ("the '686 patent"). *Id.* at 1328, 59 USPQ2d at 1498. On remand, the remaining asserted claims were: claims 1, 2, 8–12, and 18–20 of the '752 patent; claims 1, 2, and 8–10 of the '822 patent; claims 1, 2, 8–12, and 18–20 of the '050 patent; and claims 1–8 of the '023 patent (collectively "the asserted claims"). The district court again granted summary judgment for the accused infringer (TCI) with respect to the '752, '822, '050, and '023 patents, this time on the ground that the patents were unenforceable due to inequitable conduct during prosecution, and that the asserted claims were invalid as anticipated.

## I

The patents-in-suit all claim priority through a string of continuation applications to U.S. Application No. 408,161 ("the '161 application") filed September 15, 1989, and include identical figures and substantially identical written descriptions. The '161 application issued as U.S. Patent No. 5,037,143 ("the '143 patent"). The technology disclosed in the patents-in-suit was described in detail in *Dayco I*.

Briefly, the patents-in-suit are directed to flexible hoses and coupling assemblies that connect to each other for use in underground gas containment systems. When assembled for use (as shown below), a hose (31) is inserted into the coupling assembly (32), which forms a seal between the hose and the assembly.

Ridges and recesses circumscribe the interior corrugated surface of the hose. The coupling includes an outer sleeve (50) having a flat inner surface and an inner sleeve (51) having a contoured outer surface, the sleeves respectively contact the exterior and interior surfaces of the hose (31). The inner sleeve, the contours on the outer surface of which complement the ridges and recesses of the hose, is expanded outwards to seal the hose between the outer sleeve and the inner sleeve.

Dayco is also the assignee of a separate family of applications that claim original priority to U.S. Application No. 993,196 ("the '196 application") filed December 18, 1992 (collectively "the '196 family"). The technology disclosed in the '196 family is substantially similar to that disclosed in the patents-in-suit, also being directed to flexible hoses and coupling assemblies. The '196 application itself was abandoned during prosecution, and two continuation applications, U.S. Application Nos. 197,891 ("the '891 application") and 263,275 ("the '275 application"), were filed claiming priority therefrom. The '891 and '275 applications respectively issued as U.S. Patent Nos. 5,356,182 ("the '182 patent") and 5,430,929 ("the '929 patent"). The '182 and '929 patents are not asserted in the present appeal.

The '196 family of applications and the applications for the patents-in-suit were assigned to two different examiners by the Patent and Trademark Office ("PTO") and were pending at the same time. The applications that issued as patents-in-suit were assigned to examiner David Arola and the '196 family of applications was assigned to examiner Eric Nicholson. The applications in the '196 family included specific references to members of the family of applications that issued as the patents-in-suit. *See, e.g.,* '929 patent, col. 1, ll. 51–65. Thus, examiner Nicholson was made aware of the applications for the patents-in-suit. However, there is no evidence that examiner Arola was ever notified of the existence of the applications in the '196 family. The claims submitted in the '196 family of applications were in some respects substantially identical to the claims of the patents-in-suit and were rejected by examiner Nicholson on three separate occasions under 35 U.S.C. § 103 as being unpatentable over U.S. Patent No. 3,331,981 to Wilson ("Wilson") in view of U.S. Patent No. 5,096,234 to Oetiker ("Oetiker"). Examiner Nicholson found that Wilson taught all of the elements of the claims except the recited outwardly expanding sleeve, which he concluded was obvious in view of Oetiker. Examiner Arola was not advised of this rejection.

Nor was the Wilson patent, a reference cited by examiner Nicholson as the ground for rejection, even called to examiner Arola's attention.

## II

Upon remand of this matter after *Dayco I*, the defendant renewed its motions for summary judgment on the basis of unenforceability and invalidity. On June 21, 2002, the district court granted the defendant's motions. *Dayco*, 218 F.Supp.2d at 1130.

The first motion for summary judgment granted by the district court was directed to unenforceability. The district court agreed with TCI's argument that Dayco committed inequitable conduct when it "intentionally withheld material prior art and information concerning [the] co-pending ['196] application from the patent examiner [assigned to the patents-in-suit]." *Id.* at 1131. The court also held that Dayco committed inequitable conduct by failing to disclose U.S. Patent No. 3,331,981 issued to Wilson ("Wilson"). Finally, the inequitable conduct determination was also based on the failure to disclose the rejection of substantially similar claims in the '196 patent based on Wilson.

The second summary judgment motion granted by the district court was directed to invalidity under 35 U.S.C. §§ 102 and 103. This motion was granted as to anticipation under § 102. While the district court referred to other prior art materials, the grant of summary judgment was based solely on three pieces of prior art. The court concluded that every element of all of the asserted claims of the patents-in-suit was disclosed in U.S. Patent No. 2,268,142 issued to Lusher et al. ("*Lusher*") and also in a publication describing the Titeflex Chemical Transfer Hose No. R292 ("the *Titeflex Publication*"). *Id.* at 1136–38. The court also concluded that the claims of the '822 patent were antici-

pated by a prior art coupling sold by Scovill. *Id.*

The court dismissed an expert declaration submitted by Dayco concluding that the cited prior art failed to expressly or inherently teach each and every limitation of the asserted claims. The court concluded that "[t]he reference and the claimed invention are easily understandable without the need for expert testimony." *Id.* at 1137. The court also concluded that, "[h]aving found that Dayco's patents are invalid under 35 U.S.C. § 102, the court need not address the issue of obviousness [under § 103]." *Id.* at 1138.

Dayco timely filed this appeal. We have jurisdiction under 28 U.S.C. § 1295(a)(1).

## DISCUSSION

We review a district court's grant of a motion for summary judgment without deference. *Ethicon Endo–Surgery, Inc. v. United States Surgical Corp.*, 149 F.3d 1309, 1315, 47 USPQ2d 1272, 1275 (Fed. Cir.1998).

### I Inequitable Conduct

■■■ We first address the district court's grant of summary judgment of inequitable conduct and conclude that that decision must be set aside. In order "[t]o prove inequitable conduct in the prosecution of a patent, [the defendant] must have provided evidence of affirmative misrepresentations of a material fact, failure to disclose material information, or submission of false material information, coupled with an intent to deceive." *Purdue Pharma L.P. v. Boehringer Ingelheim GMBH*, 237 F.3d 1359, 1366, 57 USPQ2d 1647, 1652 (Fed.Cir.2001) (citations omitted). Both intent and materiality are questions of fact that must be proven by clear and convincing evidence. *Id.* The inequitable conduct analysis is performed in two steps comprising "first, a determination of

whether the withheld reference meets a threshold level of materiality and intent to mislead, and second, a weighing of the materiality and intent in light of all the circumstances to determine whether the applicant's conduct is *so culpable* that the patent should be held unenforceable." *Id.* (emphasis added) (citations omitted).

A question exists as to the proper standard of materiality. *See, e.g.,* 6 *Chisum on Patents* § 19.03[3] (2000). For many years this court held that materiality for purposes of an inequitable conduct determination required a showing that "a reasonable examiner would have considered such prior art important in deciding whether to allow the parent application." *Driscoll v. Cebalo,* 731 F.2d 878, 884, 221 USPQ 745, 750 (Fed.Cir.1984); *see also Fox Indus., Inc. v. Structural Pres. Sys., Inc.,* 922 F.2d 801, 803, 17 USPQ2d 1579, 1580 (Fed.Cir.1990); *Gardco Mfg., Inc. v. Herst Lighting Co.,* 820 F.2d 1209, 1214, 2 USPQ2d 2015, 2019 (Fed.Cir.1987). Information did not need to be prior art in order to be material, but "instead embrace[d] *any* information that a reasonable examiner would substantially likely consider important in deciding whether to allow an application to issue as a patent." *Akron Polymer Container Corp. v. Exxel Container, Inc.,* 148 F.3d 1380, 1382, 47 USPQ2d 1533, 1534 (Fed.Cir.1998) (citations omitted). This interpretation of materiality was based, in part, on 37 C.F.R. § 1.56(a) (1991),[1] which defined materiality using a "reasonable examiner" standard. *See Driscoll,* 731 F.2d at 884, 221 USPQ at 750; *Gardco,* 820 F.2d at 1214, 2 USPQ2d at 2019 (stating that § 1.56 is "the appropriate starting point for determining materiality").

In 1992, however, the Patent Office amended its rules to provide a different standard for materiality.[2] The new rule "was not intended to constitute a significant substantive break in the previous standard." *Hoffmann La Roche, Inc. v. Promega Corp.,* 323 F.3d 1354, 1366 n. 2, 66 USPQ2d 1385, 1395 n. 2 (Fed.Cir.2003). The new rule reiterated the preexisting "duty of candor and good faith," but more

---

1. That regulation provided:

   *A duty of candor and good faith* toward the Patent and Trademark Office rests on the inventor, on each attorney or agent who prepares or prosecutes the application and on every other individual who is substantively involved in the preparation or prosecution of the application and who is associated with the inventor, with the assignee or with anyone to whom there is an obligation to assign the application. All such individuals have a duty to disclose to the Office information they are aware of which is material to the examination of the application. *Such information is material where there is a substantial likelihood that a reasonable examiner would consider it important in deciding whether to allow the application to issue as a patent.*

   37 C.F.R. § 1.56(a) (1991) (emphases added).

2. The new rule provides:

   information is material to patentability when it is not cumulative to information already of record or being made of record in the application, and

   (1) It establishes, by itself or in combination with other information, a prima facie case of unpatentability of a claim; or

   (2) It refutes, or is inconsistent with, a position the applicant takes in:

   (i) Opposing an argument of unpatentability relied on by the Office, or

   (ii) Asserting an argument of patentability.

   A prima facie case of unpatentability is established when the information compels a conclusion that a claim is unpatentable under the preponderance of evidence, burden-of-proof standard, giving each term in the claim its broadest reasonable construction consistent with the specification, and before any consideration is given to evidence which may be submitted in an attempt to establish a contrary conclusion of patentability.

   37 C.F.R. § 1.56(b) (2003).

narrowly defined materiality, providing for disclosure where the information establishes either "a prima facie case of unpatentability" or "refutes, or is inconsistent with a position the applicant takes." 37 C.F.R. § 1.56 (1992) ("Rule 56"). In promulgating the new regulation, the Patent Office noted that: "Section 1.56 has been amended to present a clearer and more objective definition of what information the Office considers material to patentability. The rules do not define fraud or inequitable conduct which have elements both of materiality and of intent." Duty of Disclosure, 57 Fed.Reg.2021, 2024 (Jan. 17, 1992). In response to a comment suggesting that courts might interpret the duty of "candor and good faith" to require more than Patent Office rules require, the Patent Office stated that the rule was "modified to emphasize that there is a duty of candor and good faith which is broader than the duty to disclose material information." Id. at 2025. Thus, the extent, if any, to which the Patent Office rulemaking was intended to provide guidance to the courts concerning the duty of disclosure in the context of inequitable conduct determinations is not clear.

■ Since the time of the 1992 amendment we have continued to apply the reasonable examiner standard, but only as to cases that were prosecuted under the earlier version of Rule 56. *Brasseler, U.S.A. I., L.P. v. Stryker Sales Corp.*, 267 F.3d 1370, 1380, 60 USPQ2d 1482, 1488 (Fed. Cir.2001); *GFI, Inc. v. Franklin Corp.*, 265 F.3d 1268, 1274, 60 USPQ2d 1141, 1143–44 (Fed.Cir.2001); *Li Second Family Ltd. v. Toshiba Corp.*, 231 F.3d 1373, 1379, 56 USPQ2d 1681, 1686 (Fed.Cir.2000).

The court has not decided whether it should adhere to the preexisting standard for inequitable conduct in prosecutions occurring after the effective date of the new rule. *See Molins PLC v. Textron*, 48 F.3d 1172, 1179 n. 8, 33 USPQ2d 1823, 1827 n. 8 (Fed.Cir.1995); *see also Duro–Last, Inc. v. Custom Seal, Inc.*, 321 F.3d 1098, 1109–10, 66 USPQ2d 1025, 1030 (Fed.Cir.2003); *PerSeptive Biosystems, Inc. v. Pharmacia Biotech, Inc.*, 225 F.3d 1315, 1322 n. 2, 56 USPQ2d 1001, 1005 n. 2 (Fed.Cir.2000); *Upjohn Co. v. Mova Pharm. Corp.*, 225 F.3d 1306, 1312, 56 USPQ2d 1286, 1291 (Fed.Cir.2000). Thus, we have not decided whether the standard for materiality in inequitable conduct cases is governed by equitable principles or by the Patent Office's rules.[3]

Three of the patents-in-suit were filed and prosecuted after the January 17, 1992, rule change, and the prosecution of the other application continued after the rule change. Because we conclude that the outcome of this appeal would be the same under either materiality standard, we leave for another day a final disposition of this issue. *See PerSeptive*, 225 F.3d at 1322 n. 2, 56 USPQ2d at 1005 n. 2

### A. The '196 Application

Three pieces of information were relied upon by the district court as the basis for its holding of unenforceability, (1) pendency of the '196 application before examiner Nicholson, (2) the Wilson patent, and (3) the rejection of claims in the '196 application under 35 U.S.C. § 103 by examiner Nicholson based on Wilson.

---

**3.** The court's authority to render a patent unenforceable for inequitable conduct is founded in the equitable principle that "he who comes into equity must come with clean hands." *Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.*, 324 U.S. 806, 814, 65 S.Ct. 993, 89 L.Ed. 1381 (1945); *United States v. Am. Bell Tel. Co.*, 128 U.S. 315, 364–65, 9 S.Ct. 90, 32 L.Ed. 450 (1888) (describing the genesis of inequitable conduct in the patent context as from the equity jurisprudence in real property law); *Winbond Elecs. Corp. v. Int'l Trade Comm'n*, 262 F.3d 1363, 1372 (Fed.Cir.2001).

■ We will first address the '196 application. The district court found inequitable conduct because the same attorney prosecuted both the patents-in-suit and the '196 application, but failed to disclose the existence of the '196 application to examiner Arola. The Manual of Patent Examiner Procedure ("M.P.E.P.") makes clear that "if an inventor has different applications pending in which similar subject matter but patentably indistinct claims are present that fact must be disclosed *to the examiner of each of the involved applications.*" M.P.E.P. § 2001.06(b) (emphasis added). This court has held that under the "reasonable examiner" standard of materiality, "[an] application was highly material to the prosecution of [an application, where] it could have conceivably served as the basis of a double patenting rejection." *Akron Polymer,* 148 F.3d at 1382, 47 USPQ2d at 1534. The judicially created doctrine of obviousness-type double patenting "prohibits an inventor from obtaining a second patent for claims that are not patentably distinct from the claims of [a] first patent.' *In re Lonardo,* 119 F.3d 960, 965, 43 USPQ2d 1262, 1266 (Fed.Cir.1997). Dayco argues that the '196 application did not meet the threshold level of materiality because "each of the patents-in-suit was ultimately subject to a terminal disclaimer limiting its term to that of the '143 patent, the term of which is much shorter than that of any patent that conceivably could have issued from the '929 [sic '196] application." (Appellant's Br. at 55.) Thus, Dayco's position is that inequitable conduct is measured in relation to the patent rights that the applicant actually achieved. *See, e.g., Scripps Clinic & Research Found. v. Genentech, Inc.,* 927 F.2d 1565, 1583, 18 USPQ2d 1896 (Fed.Cir.1991) ("A reference that is material only to withdrawn claims can not be the basis of a holding of inequitable conduct."). By disclaiming the portion of its patent term to which the '196 application was relevant, Dayco argues

that information as to the pendency of the '196 application cannot form the basis for an inequitable conduct finding.

■ Even accepting, *arguendo,* Dayco's theory that information material at the outset of prosecution may become immaterial depending on the result of the prosecution, we reach a different result here because a copending application may be material even though it cannot result in a shorter patent term when it could affect the rights of the patentee to assign the issued patents.

While Dayco is correct in noting that the patent terms of the patents-in-suit would not have been further shortened by filing a terminal disclaimer in view of the applications in the '196 family (since the terms of the patents-in-suit were limited to the term of the earlier '143 patent), shortening of a patent's term is not the only result of overcoming a double patenting rejection by terminal disclaimer. In order to overcome a double patenting rejection using a terminal disclaimer, the applicant must also include in the disclaimer "a provision that any patent granted on that application ... shall be enforceable only for and during such period *that said patent is commonly owned with the application or patent which formed the basis for the rejection.*" 37 C.F.R. § 1.321(c)(3) (2002) (emphasis added). Thus, the disclosure of the '196 application to examiner Arola could have led to double patenting rejections in the applications that issued as the patents-in-suit, and a disclaimer requiring that the patents-in-suit were enforceable only so long as they were "commonly owned" with the patents issued from the '196 family. Because of the nondisclosure of the '196 application to examiner Arola, the patentee received patents that were not subject to a common ownership limitation with respect to the '196

family. The pendency of the '196 applications was, therefore, material.

Additionally, the '196 application meets the threshold level of materiality under the new Patent Office Rule 56, in that it "establishes, by itself ... a prima facie case of unpatentability of a claim." The basis for establishing unpatentability is the potential double patenting rejection, the same basis addressed by the court in *Akron Polymer*. 148 F.3d at 1382, 47 USPQ2d at 1534.

While the '196 application meets the threshold level of materiality, however, TCI's motion for summary judgment did not establish a threshold showing of intent to deceive. In *Akron Polymer*, under facts substantially similar to the facts here, the court determined that the requisite intent could not be inferred because the patentee did "disclose the existence of the [the second] application to the [first] application's examiner, and thus put the PTO on notice of the copendency of the two applications." *Id.* at 1383–84, 148 F.3d 1380, 47 USPQ2d at 1535. Here, members of the family of applications that issued as the patents-in-suit were disclosed to the examiner assigned to the copending application. As in *Akron Polymer*, "[t]his fact points away from an intent to deceive." *Id.* at 1384, 47 USPQ2d at 1536. Thus, there was no basis for summary judgment that the failure to inform examiner Arola of the existence of the '196 application satisfied the requirement of a threshold showing of intent to deceive.

### B. The Wilson Patent

■ The second piece of information cited by the district court as a basis for its holding of inequitable conduct was the Wilson patent. The district court held that Wilson was material and not cumulative to the prior art already cited to the examiner assigned to the applications that issued as the patents-in-suit. *Dayco*, 218 F.Supp.2d at 1134. The court concluded that Dayco had the requisite threshold intent to deceive based on the fact that "[Dayco's attorney] knew of and intentionally withheld the Wilson '981 patent from [the examiner]."[4] *Id.* at 1135.

In opposition to TCI's motion for summary judgment, Dayco submitted a declaration by its expert urging that the Wilson reference did not meet the threshold level of materiality because it was from a different field of technology and was "less pertinent than, and cumulative of, prior art that was before the examiner." (J.A. at 1624–25.) Specifically, Dayco's expert described Wilson as from the "field of electrical conduits," which he urged failed to "address the point of novelty of the accused patents." (*Id.* at 1624.) He also opined that U.S. Patent Nos. 1,915,041 to Wallace, 3,072,174 to Vanderhoof, and 4,400,022 to Wright, which were presented to the examiner, rendered Wilson cumulative to and less pertinent than the cited prior art.

TCI argued in its motion for summary judgment that "[t]he Wilson '981 patent is not cumulative to the prior art considered by Examiner Arola during prosecution of the patents in suit, because it discloses all of the elements of the claimed combination, with the exception of outward radial expansion, in a single reference." (J.A. at 96.) Thus, through attorney argument, TCI attempted to counter the assertions of

---

4. Additionally, the district court held the '752 patent to be unenforceable for failure to cite Wilson, despite the fact that the '752 patent issued on April 6, 1993, prior to earliest citation of Wilson by the Patent Office on June 11, 1993. On appeal, TCI does not assert that this holding was proper, arguing only that Wilson was material to the prosecution of the '050, '023, and '822 patents. (Appellee's Br. at 16.) For this additional reason, the holding of unenforceability as to the '752 patent was in error.

Dayco's expert concerning the materiality of Wilson.

We conclude that applying either standard of materiality, it was improper for the district court to conclude on summary judgment that the Wilson reference met the necessary threshold level of materiality. The mere fact that examiner Nicholson found the Wilson reference to be material is informative, but not dispositive. Whether Wilson meets the threshold level of materiality would require a detailed factual analysis of the relevance of the teachings of that reference both with respect to the claims of the patents-in-suit and with respect to the other prior art references that were before the examiner. *See, e.g., FMC Corp. v. Manitowoc Co.,* 835 F.2d 1411, 1415, 5 USPQ2d 1112, 1115 (Fed.Cir. 1987) (holding that "prior art or information was not material . . . because it is less pertinent than or merely cumulative with prior art or information cited to or by the PTO"); 37 C.F.R. § 1.56(b) (1992) ("information is material to patentability when it is not cumulative to information already of record or being made of record in the application").

On the issue of intent, the district court also erred in concluding that the mere fact that the prosecuting attorney knew of the Wilson reference and decided not to submit it to the examiner established intent. Here, the patentee submitted a declaration from the prosecuting attorney explaining that in good faith he concluded that the reference was not material because "[he] considered it to be far afield from the accused patents at the time it was cited." (J.A. at 1612.) That explanation is not on its face implausible. The district court noted that "Dayco intended to withhold the Wilson '981 patent from the PTO." *Dayco,* 218 F.Supp.2d at 1136. However, inequitable conduct requires not intent to withhold, but rather intent to deceive. Intent to deceive cannot be inferred simply from

the decision to withhold the reference where the reasons given for the withholding are plausible. The grant of summary judgment of unenforceability based on Wilson must, therefore, be set aside. Based on the present record, there is no basis for a claim of inequitable conduct concerning the withholding of the Wilson reference.

C. The Rejection of Substantially Similar Claims

■ The final piece of information relied upon by the district court when granting summary judgment of unenforceability was the existence of an outstanding rejection of claims in the '196 application that were substantially similar in content and scope to claims pending in the applications that issued as the patents-in-suit. The district court relied upon the "multiple rejections of claims with identical subject matter in the '196 application and its progeny in view of the Wilson '981 patent." *Id.* at 1135.

This court has never addressed whether the prior rejection of a substantially similar claim in a copending United States application is material under the reasonable examiner standard. The District Court for the Northern District of Indiana addressed this issue, "find[ing] that it was important for [an examiner] to know that another knowledgeable Patent Examiner had carefully examined and rejected all claims of [another] application, including claims that were directly related to claims in the [present] application, on the grounds that the claims were obvious in light of prior art patents." *Golden Valley Microwave Foods, Inc. v. Weaver Popcorn Co.,* 837 F.Supp. 1444, 1474 (N.D.Ind.1992). Without such a disclosure requirement "applicants [may] surreptitiously file repeated or multiple applications in an attempt to find a 'friendly' Examiner." ABA Section of Intellectual Property Law, *Annual Report 1993–1994* (1994).

■ We hold that a contrary decision of another examiner reviewing a substantially similar claim meets the *Akron Polymer* "reasonable examiner" threshold materiality test of "*any* information that a reasonable examiner would substantially likely consider important in deciding whether to allow an application to issue as a patent." 148 F.3d at 1382, 47 USPQ2d at 1534 (emphasis in original). Patent disclosures are often very complicated, and different examiners with different technical backgrounds and levels of understanding may often differ when interpreting such documents. Although examiners are not bound to follow other examiners' interpretations, knowledge of a potentially different interpretation is clearly information that an examiner could consider important when examining an application.

■ We also hold that the information meets the threshold level of materiality under new Rule 56, in that "[i]t refutes, or is inconsistent with, a position the applicant takes in ... [a]sserting an argument of patentability." 37 C.F.R. § 1.56(b)(2) (2002). When prosecuting claims before the Patent Office, a patent applicant is, at least implicitly, asserting that those claims are patentable. A prior rejection of a substantially similar claim refutes, or is inconsistent with the position that those claims are patentable. An adverse deci-

sion by another examiner, therefore, meets the materiality standard under the amended Rule 56. However, the district court did not address intent to deceive related to the failure to disclose the examiner's adverse decision. A trial on this issue is, therefore, necessary.

## II Invalidity

■ We next address the district court's holding of invalidity. On appeal, TCI seeks to support the holding of invalidity of all of the claims over the Lusher and Titeflex prior art primarily with reference to claim 1 of the '050 patent. (Appellee's Br. at 39.) Additionally, TCI supports the holding of invalidity of the claims of the '822 patent over the Scovill prior art, which we will address separately. We conclude that the district court's grant of summary judgment of invalidity must also be set aside.

### A.  Lusher

The first prior art reference addressed by the district court was the Lusher patent. The district court concluded that "[t]here are no genuine factual disputes" and described its interpretation of the teachings of Lusher. *Dayco*, 218 F.Supp.2d at 1137–38. In particular, the district court described Figure 2 of Lusher (reproduced below) as anticipating the asserted claims of the patents-in-suit.

*Fig. 2.*

As this court has stated, "the dispositive question regarding anticipation [i]s whether *one skilled in the art* would reasonably understand or infer from the [prior art reference's] teaching" that every claim element was disclosed in that single reference. *In re Baxter Travenol Labs.*, 952 F.2d 388, 390, 21 USPQ2d 1281, 1284 (Fed.

Cir.1991) (emphasis added); *see also Schumer v. Lab. Computer Sys., Inc.*, 308 F.3d 1304, 1315, 64 USPQ2d 1832, 1841 (Fed.Cir.2002) ("Typically, testimony concerning anticipation must be testimony from one skilled in the art and must identify each claim element, state the witnesses' interpretation of the claim element, and explain in detail how each claim element is disclosed in the prior art reference."). Dayco filed an expert declaration in the district court urging that the asserted claims of the patents-in-suit were not anticipated because of the failure of the prior art to disclose specific claim limitations. TCI submitted no responsive expert declaration. The district court improperly dismissed Dayco's expert report because "[t]he reference and the claimed invention are easily understandable without the need for expert testimony." *Dayco*, 218 F.Supp.2d at 1137.

One issue related to anticipation is whether Lusher teaches a polymeric hose as required by claim 1 of the '050 patent. Dayco's expert urged that Lusher failed to disclose a polymeric hose. In granting summary judgment, the district court did not address this issue. On appeal, TCI admits that the reference fails to expressly state that the hose 18 of Lusher is a polymeric hose. Instead, TCI asserts that "[i]t is inherent from Figure 2 that the inner corrugated hose was made from a synthetic (*i.e.* polymeric) material." (Appellee's Br. at 44.) There is no support on the record before us for the proposition that Lusher (filed September 27, 1939), *necessarily* disclosed the use of a polymeric material. "To serve as an anticipation when the reference is silent about the asserted inherent characteristic, such gap in the reference may be filled with recourse to extrinsic evidence[; however, s]uch evidence *must make clear that the missing descriptive matter is necessarily present in the thing described in the reference.*" *Cont'l Can Co. USA v. Monsanto Co.*, 948 F.2d 1264, 1268, 20 USPQ2d 1746, 1749 (Fed.Cir.1991) (emphasis added). TCI has cited to no evidence that this missing element was necessarily present.

Thus, the district court erred in concluding that Lusher teaches each and every limitation of claim 1. We, therefore, set aside the grant of summary judgment of invalidity as to claim 1 of the '050 patent based on Lusher.

### B. The Titeflex Publication

With respect to the Titeflex Publication, the court concluded: "every element of each of the asserted claims is found in the 1976 publication for the Titeflex Chemical Transfer Hose No. R292 ('Titeflex')." *Dayco*, 218 F.Supp.2d at 1137. Dayco's expert urged that the Titeflex publication failed to teach "an insert means that is radially outwardly expandable." (J.A. at 1572–73.) The district court, however, did not address the asserted distinction.

TCI supports the district court holding by arguing on appeal that "[b]ased on the Titeflex illustration, one of ordinary skill in the art would recognize that it is inherent that the insert would be radially outwardly expanded." (Appellee's Br. at 48.) In support of this statement, TCI cites the report of its expert, which simply asserts that the Titeflex Publication discloses "[a] cutaway of the hose [which] shows a coupling with an insert means disposed in one end of the tubular hose and inherently being radially outwardly expanded *or the hose being radially inwardly compressed* into sealing relation with said inner corrugated hose." (J.A. at 1385) (emphasis added). The statement provided in TCI's expert's report does not provide any evidence to support the position that the structure disclosed is necessarily outwardly expanded. Quite to the contrary, the expert notes that instead the hose may be

inwardly compressed. The unsupported and equivocal statement of TCI's expert cannot support the district court's grant of summary judgment, which must, therefore, be set aside.

## C. The Scovill Coupling

The final piece of prior art relied upon by the district court when granting summary judgment was the Scovill Model 520–H coupling, which was applied solely to the claims of the '822 patent. The reason the Scovill 520–H coupling was applied solely to the claim of the '822 patent was the district court's claim construction, which provided that "[t]he claims of the '822 patent do *not* include a hose." *Dayco*, 218 F.Supp.2d at 1137 (emphasis in original). This claim construction was purportedly based on this court's opinion in *Dayco I*. *Id.* at 13 (citing *Dayco I*, 258 F.3d at 1322, 59 USPQ2d at 1493). In the Background section of *Dayco I*, this court discussed the differences in language between the independent claims of the patents-in-suit, noting:

> The '822 patent is different in that instead of claiming a "hose construction," it claims "*a coupling for* a hose construction" with "projections of said insert means being *adapted to be* respectively received in said recesses of said inner hose and said projections of said inner hose being *adapted to be* respectively received in said recesses of said insert means."

258 F.3d at 1322, 59 USPQ2d at 1493 (emphasis in original). The court was not purporting to determine whether specific claim language would not be part of the claim as properly construed. The body of claim 1 recites "said inner peripheral surface means *of said hose* comprises an inner corrugated hose made of polymeric material having inwardly directed projections with recesses therebetween and extending from said one end of said tubular hose to the other end thereof." '822 patent, claim 1

(emphasis added). Thus, the hose is expressly recited in the body of the claim and was improperly read out of the claim by the district court. The district court's claim construction was in error, as was its summary judgment grant of anticipation based thereon.

## III. Impermissible Grouping of Claims

■ Finally, we hold that the district court committed error by not addressing claim validity on an individual basis. In granting summary judgment, the district court stated that:

> The Court finds that every element of the asserted claims in the '752, '822,- '050, and '023 patents is found in the 1941 prior art U.S. Patent 2,268,142 ("Lusher '142"). Similarly, every element of each of the asserted claims is found in the 1976 publication for the Titeflex Chemical Transfer Hose No. R292 ("Titeflex").... Every element of the claimed '822 coupling is shown in the prior art, namely the Scovill 520–H coupling.

*Dayco*, 218 F.Supp.2d at 1137. This grouping of claims is contrary to law, which requires that "[e]ach claim of a patent (whether in independent, dependent, or multiple dependent form) shall be presumed valid independently of the validity of other claims; [and] dependent or multiple dependent claims shall be presumed valid even though dependent upon an invalid claim." 35 U.S.C. § 282 (2000). The burden of proving the invalidity of the claims was on the defendant. *See, e.g., Abbott Labs. v. Geneva Pharms., Inc.*, 182 F.3d 1315, 1318, 51 USPQ2d 1307, 1309 (Fed.Cir.1999). To be sure, it is permissible to group claims together for disposition where resolution involves the same issues of validity; however, the justification for such grouping is possible only where those issues are substantially materially identical. Where claims differ in scope in an

aspect material to the analysis, those claims must be addressed individually.

■ On appeal, TCI argues that all of the asserted independent claims are invalid for the same reason that claim 1 of the '050 patent is invalid. (Appellee's Br. at 39.) We have held that the finding of anticipation of claim 1 on summary judgment was erroneous. Even if claim 1 were invalid, TCI's theory would not be sustainable. TCI cites for its theory the court's decision in *Dayco I,* 258 F.3d at 1321, 59 USPQ2d at 1492, in which we stated that "[i]ndependent claim 1 of the '050 patent is representative of the claims in suit in most respects." (Appellee's Br. at 39.) This statement in the Background section of our prior opinion did not absolve TCI from the statutory requirement to prove the invalidity of each claim independently. *Dayco I* was decided in the context of claim construction, wherein identical language in different claims is grouped together in view of the rule that if a claim term appears in more than one claim it should be construed the same in each. *CVI/Beta Ventures, Inc. v. Tura LP,* 112 F.3d 1146, 1159, 42 USPQ2d 1577, 1586 (Fed.Cir.1997) *cert. denied, Marchon Eyewear v. Tura LP,* 522 U.S. 1109, 118 S.Ct. 1039, 140 L.Ed.2d 105 (1998). The grouping of recitations in different claims for the purpose of claim construction does not permit the grouping of claims, each independently possessing a presumption of validity, for disposition of their validity.

Here, there are seven independent and twenty-six dependent claims in four separate patents. These claims are not materially identical for the purpose of determining their validity. For example, Dayco's expert urged that: claim 2 of the '050 patent was materially different because it required that the projections of the hose be "annular"; claim 10 of the '050 was materially different because it required a "rotatable nut means"; and all of the asserted claims of the '752 patent were materially different because they required "inwardly convex projections."

For these reasons, the grant of summary judgment of invalidity as to claims not individually addressed by the district court must be set aside.

### IV. Remand

This is the second time that we have reversed a grant of summary judgment in favor of the defendant. The time has come when this case must be set for trial. In that connection, we note that this case is complex, involving as it does multiple patents, multiple claims, and defenses and counterclaims of unenforceability and invalidity. On remand counsel for both parties have an obligation to cooperate in narrowing the issues, and avoiding untenable arguments, which serve only to confuse the real issues before the district court. On the present record there is no basis for a claim of unenforceability concerning the failure to disclose the copendency of the '196 application or the Wilson patent, nor is there any basis for a claim of invalidity of the asserted claims as being anticipated under 35 U.S.C. § 102 given the presumption of validity that applies to all patents. Absent the discovery of material new evidence the court should entertain summary judgment motions by plaintiff to dispose of these claims.

### CONCLUSION

We conclude that a trial is required on the issue of infringement. The standards for claim interpretation are those set forth in this opinion and our earlier opinion in *Dayco I,* 258 F.3d at 1324–25, 57 USPQ2d at 1494–95. Further, invalidity under 35 U.S.C. § 103 for obviousness should be resolved at trial, as should the issue of inequitable conduct related to the failure to disclose the rejection of substantially

similar claims in a copending application. The district court should determine whether any material new evidence is provided that requires a trial on the issue of anticipation or other issues of inequitable conduct.

*VACATED AND REMANDED.*

### COSTS

Costs to appellant.