GAJARSA, Circuit Judge,
dissenting.
This case exemplifies the ongoing pandemic of baseless inequitable conduct charges that pervade our patent system. For the reasons stated below, I respectfully dissent from the majority opinion.
Defendants’ inequitable conduct claim rests on a handmade drawing that the inventor, John Wong, sketched on a piece of paper during his deposition. Defendants’ counsel requested that Wong draw the prior art that “inspired” him to experiment in making pucker-free seams in dress shirts. In response, he sketched a prior art seam used to waterproof raincoats manufactured in the TAL factory. During litigation, Wong’s drawing was labeled the “Undisclosed Raincoat Seam” (“URS”). After a bench trial, the district court found that Wong committed fraud on the U.S. Patent and Trademark Office (“PTO”) because he failed to disclose the URS as the “inspiration” for his invention. We vacated the inequitable conduct finding on the first appeal because there is no legal requirement that an inventor disclose the “inspiration” for his invention to the PTO. We remanded the case for a proper substantive inquiry into whether the URS was merely cumulative of the prior art on record with the PTO. Taltech Ltd. v. Esquel Enters., Inc., 279 Fed.Appx. 974, 977 (Fed.Cir.2008) (“If the undisclosed raincoat seam was merely cumulative to Robers, then no inequitable conduct lies in its nondisclosure.”).
On remand, the district court again found that Wong had committed inequitable conduct based on his failure to disclose the URS, but did so based on a flawed cumulativeness inquiry. The district court erroneously limited the teachings of both the URS and the Robers reference in order to render them non-cumulative prior art. Had the district court properly interpreted the teachings of both references, it would have found that the URS was merely cumulative of Robers.
The district court also improperly inferred intent to deceive from the materiali *1336 ty of the non-disclosed reference and several statements Wong made to the PTO. In both instances, the district court drew an inference of bad faith despite an equally plausible, and likely more reasonable, inference of good faith. Such an analysis has been rejected by this court and is legally erroneous. See Scanner Techs. Corp. v. ICOS Vision Sys. Corp., 528 F.3d 1365, 1376 (Fed.Cir.2008) (“Whenever evidence proffered to show either materiality or intent is susceptible of multiple reasonable inferences, a district court clearly errs in overlooking one inference in favor of another equally reasonable inference.”). The district court’s numerous legal and factual errors are discussed in more detail below.
A.
The district court began its cumulativeness inquiry by interpreting the teachings of Robers, the closest prior art on record. Robers is a German patent application that was considered by the examiner during prosecution and is cited as a reference on the face of the '779 patent. As part of its cumulativeness inquiry, the district court considered a portion of the English translation of Robers that TAL submitted to the PTO:
a process for the production of a pucker free closure seam, in particular for pope-line and gabardine materials, wherein a seam of or containing a thermoplastic is sewn into the seam by a method already known, and the part of the material adjoining the seam is then ironed while under slight tension.
During litigation, Esquel submitted a different translation of the Robers patent to aid the district court in interpreting the German reference. After comparing the two translations on remand, the district court found TAL’s translation inadequate and held that the inadequacies limited Robers’ disclosure. Taltech Ltd. v. Esquel Enters., Inc., 609 F.Supp.2d 1195, 1204 (W.D.Wash.2009).
The district court’s analysis is flawed. First, the issue on remand was whether the URS was cumulative of Robers, not vice versa. Thus, it is not apparent what the district court meant when it stated that “the Court would not view the Robers Patent as cumulative.” TALtech, 279 Fed. Appx. at 977. Second, while the district court quibbled over the proper translation of several words from German to English, it also noted that “the translators chose different English words having, for the most part, equivalent meanings.” Taltech, 609 F.Supp.2d at 1204 (emphasis added). The art of translation is not precise, and, absent any evidence of intent to deceive, minor variations in submitted translations do not constitute inequitable conduct.
Had the district court properly considered the teachings of Robers, it would have concluded that the URS is merely cumulative of Robers. To determine whether a reference is cumulative of the prior art disclosed to the PTO, this court uses an element-by-element approach to compare the disclosed prior art reference and the undisclosed prior art reference with the claimed invention. See Baxter Int’l Inc. v. McGaw, Inc., 149 F.3d 1321, 1329 (Fed.Cir.1998). In this case, the undisclosed prior art reference, the URS, has the following elements: (a) a top fabric layer, (b) a bottom fabric layer, (c) a folded strip of adhesive, (d) a set stitch, and (e) a top stitch. Likewise, the disclosed reference, the Robers patent, has the very same elements: (a) a top fabric layer (“2”), (b) a bottom fabric layer (“3”), (c) a folded strip of adhesive (“1”), (d) a set stitch (“4”), and (e) a top stitch (“5”).
*1337 [[Image here]]
Robers, however, also discloses an important element that is not present in the URS. Robers’ top stitch passes through the first fabric layer, the strip of adhesive, and the second fabric layer. Wong testified that this type of top stitch was discovered to be vital in preventing seam puckering in dress shirts. The claimed invention uses a top stitch that passes through both layers of fabric and the strip of adhesive. This element was critical to the success of the claimed invention, yet it is entirely absent from the URS because the URS’s top stitch passes through layers of fabric only. Thus, Robers discloses every element that the URS discloses and also discloses the critical top stitch not disclosed in the URS. Accordingly, the URS is merely cumulative and does not support a finding of inequitable conduct. See Halliburton Co. v. Schlumberger Tech. Corp., 925 F.2d 1435, 1443 (Fed.Cir.1991) (“[T]he cited references were more pertinent to the Halliburton applications than were the withheld references. Halliburton had no obligation to disclose cumulative references.”). The failure by the district court to properly analyze the two references element by element is reversible error.
Moreover, had the district court correctly read the teachings of Robers and the URS in the context of the '779 patent, it would have concluded that Robers is the more relevant reference. The claimed invention is directed to achieving pucker-free seams in dress shirts. Likewise, Robers claims a method of achieving pucker-free seams in dress shirts. Indeed, Robers teaches that its “chief aim” was to provide “seams for garments in which the occurrence of puckers is reliably prevented ... despite subsequent treatment in the form of repeated laundering and drying.” Conversely, as Wong testified, the URS was used only in raincoats. Because the more relevant reference, Robers, was disclosed, Wong’s failure to disclose the less relevant reference does not support the district court’s inequitable conduct finding. See Pro-Mold, Tool Co. v. Great Lakes *1338 Plastics, Inc., 75 F.3d 1568, 1577 (Fed.Cir.1996) (finding that less relevant art is not material prior art).
Additionally, in finding the URS not cumulative of Robers, the district court improperly limited the scope of both the URS and Robers. Turning first to the URS, the district court concluded that the URS was an “armhole seam.” However, there is no evidence whatsoever that the URS was an “armhole seam.” Wong testified that his factory in Thailand made a raincoat seam that had only one top stitch, but he did not testify that such seams were used as armhole seams. Wong also testified that the TAL plant in Malaysia used different seams for raincoats, one of which had a set stitch and another not having a set stitch. When Wong sketched the URS at his deposition in 2006, he did not identify it as an armhole seam. Wong did testify that “the rain coat seams that [he] either took apart or looked at in early 1994” contained a variety of different patterns and stitches and that some were used “in the armhole or around the arm of a rain coat.” But Wong was never asked during the deposition whether the URS, a drawing which he made at the deposition, was an armhole seam. Furthermore, he never testified that it was. Nevertheless, the district court improperly limited the URS to an armhole seam of a raincoat, instead of merely a raincoat seam. The district court failed to understand that the URS was a drawing made during the deposition subsequent to the issuance of the patent, and only in reply to how the inventor was “inspired” to make the invention. See TALtech, 279 Fed.Appx. at 977.
Furthermore, the majority improperly affirms the district court’s flimsy attempt to distinguish the URS as non-cumulative prior art based on the URS’s disclosure of a specific type of thermoplastic adhesive, Vilene SL33. Maj. Op. at 1330-31. While Robers discloses an adhesive element, it does not specifically disclose Vilene SL33. However, the district court’s materiality finding based on Vilene SL33 is error. Claims 3 and 22 disclose a general type of thermoplastic adhesive, a polyamide, for the garment seams. However, none of claims require Vilene SL33 or any other specific type of thermoplastic adhesive. The examiner considered numerous examples of polyamide adhesives for garment seams in the prior art on record, including Benstock, Swan, Off, and Saniscalchi. Thus, no reasonable examiner would have found the URS’s disclosure of Vilene SL33 material because the specific type of polyamide adhesive was not relevant to the examination of the pending claims.
This court has already rejected the argument that the majority now upholds, namely, that an undisclosed reference is material where it discloses a specific element in greater detail than the examiner’s cited references. Larson Mfg. Co. v. Aluminart Prods., 559 F.3d 1317, 1332-33 (Fed.Cir.2009). Reversing the finding of inequitable conduct, this court noted that:
The claim language and limitations at issue require neither a specific type of weather stripping nor a particular retention capability. Rather, the limitations ... simply require any type of general weather stripping ... [T]he Panel was not concerned with a particular retention capability. Accordingly, a greater retention capability of weather stripping was wholly irrelevant — i.e., immaterial ... and could not be the basis of a distinguishing feature to make the [undisclosed prior art reference] and the DE '478 patent not cumulative — i.e., material.
Id. at 1333 (internal citations omitted). The same analysis applies in this case. The examiner was not concerned with any specific type of adhesive. The examiner’s focus was the “particular folding steps of *1339 the garment parts (or particular positioning of the above parts) with respect to the bonding element,” as specified in the '779 patent’s independent claims. Those “particular folding steps” and “positioning” of the elements were not present in either Robers or the URS; thus, the examiner allowed the claims. Accordingly, the specific type of adhesive — Vilene SLL3 or otherwise — was wholly irrelevant, i.e., immaterial, and cannot be a basis for distinguishing the URS as noncumulative prior art.
Turning to the district court’s analysis of Robers, the district court improperly limited the scope of Robers to buttonholes. Yet Robers teaches that his invention “may be used to advantage with closure seams of all types” and is not limited to fastening such as buttonholes, as the district court erroneously found. Robers also teaches that that these closure seams may be used to achieve a “smooth shirt breast” and explains that “the invention may also be used, for example, on one or both sides of a buttonhole for the purpose of reinforcement....” A buttonhole is merely one type of closure contemplated by the patent. Despite this express disclosure, the district court held that Robers’ disclosure was limited to buttonholes. The district court’s interpretation of the URS and Robers are unreasonable and contradicted by the express teachings of both references.
In sum, Robers discloses a method to achieve “smooth” dress shirt seams, like the claimed invention covering “pucker-free” seams in dress shirts. The URS, on the other hand, discloses seams in raincoats to prevent water from entering the raincoats, not to prevent puckering. Moreover, Robers discloses more elements of the claimed invention than the URS. Robers is the more relevant reference in relation to the claimed invention. Thus, the URS is not material and is merely cumulative of Robers, a reference which TAL disclosed to the PTO during prosecution. Accordingly, the district court’s finding of inequitable conduct based on Wong’s failure to disclose the URS is entirely improper and legally erroneous.
The majority also affirms the district court’s reliance on a series of immaterial representations made during the prosecution of the '779 patent. Even assuming that the statements regarding the prior art are factually incorrect, none of the statements are material to patentability of the claimed invention.
First, the majority affirms the district court’s erroneous reliance on TAL’s statement regarding the “double top-stitch seam” found in the prior art. TAL stated in its 1996 Amendment that “two top stitches protruding through the upper garment ply may be acceptable in the seams of heavy raincoats, but it is wholly inadequate for most garments, including dress shirts.” The majority finds that statement is “refute[dj” by evidence that a small percentage of TAL’s dress shirts included two top stitches. Maj. Op. at 1333. The majority assumes, however, that these statements are somehow “material” because “it is not cumulative of other disclosures,” despite the fact that the claimed invention does not include two top stitches. Id. Accordingly, the examiner would have had no interest in this representation because it does not impact the patentability of the claimed seams.
Second, the majority affirms another erroneous finding regarding a statement in TAL’s 1996 Amendment about prior art “overlock” stitches. Maj. Op. at 1333. TAL stated that an “overlock stitch ... is unacceptable in most applications, particularly dress shirts, because it increases the thickness of the seam and is uncomfortable as it rubs a wearer.” Again, the majority relies on evidence that some of TAL’s dress shirts included the use of an over- *1340 lock stitch to find that TAL made a material misrepresentation relating to its claimed pucker-free dress shirts. Id. at 1333. However, the majority fails to explain how TAL’s statement, that a thick overlock stitch was not acceptable for a smooth dress shirt seam, misled the examiner in allowing the claims, none of which includes this type of overlock stitch. Accordingly, there is no logical factual or legal support for the inequitable conduct finding.
B.
Because I believe that the URS and TAL’s representations to the PTO are not material, I need not determine whether TAL intended to deceive the PTO. See Star Scientific, Inc. v. R.J. Reynolds Tobacco Co., 537 F.3d 1357, 1365 (Fed.Cir.2009) (“[A]t least a threshold level of each element — i.e., both materiality and intent to deceive — must be proven by clear and convincing evidence.”). But, because the majority has approved a deceptive intent finding that lacks any support in law or fact and represents a dangerous departure from our precedent, I will now turn to the district court’s intent to deceive analysis.
Conceding it lacked a smoking gun, the district court inferred that TAL intended to deceive the PTO from circumstantial evidence. Taltech, 609 F.Supp.2d at 1208. First, the district court found TAL’s disclosure of a raincoat seam with no set stitch and two top stitches, coupled with TAL’s representation to the PTO that such a seam is “wholly inadequate for dress shirts,” evidenced an intent to deceive. Id. According to the district court, intent could be inferred because “[TAL] disclosed only the seam with two top stitches, which he argued was not suitable for his invention, while contemporaneously withholding the seam with only one top stitch [the URS], which more closely approximates the seam used in high-priced dress shirts.” Id. Yet, it is undisputed that Robers disclosed a single top stitch. See supra p. 1337 (Robers’ Fig. 3). Even if the majority and district court believe that the Robers translation was “inadequate,” such inadequacy could not have prevented the examiner from understanding Robers’ Figure 3 which, whether read in German or English, indisputably contains a single top stitch. Accordingly, the district court inferred intent from the failure to disclose a prior element that was in fact already before the examiner. This establishes not only that the URS was cumulative of Robers, but also that the district court’s inference of deceptive intent is unwarranted. See Hebert v. Lisle Corp., 99 F.3d 1109, 1116 (Fed.Cir.1996) (“Intent to deceive cannot be inferred solely from the fact that information was not disclosed; there must be a factual basis for a finding of deceptive intent.”).
Next, the district court inferred intent from an allegedly “misleading” statement by Wong that he had only recently become aware of the disclosed double top-stitch seam. See Taltech, 609 F.Supp.2d at 1208. The statement that the district court labeled “misleading” occurred in the 1996 amendment that presented the drawing of the “Disclosed Raincoat Seam” in these words:
In addition to the current prior art of record, applicant’s representative has recently become aware that applicant has made prior sales in the United States of raincoats that incorporate an adhesive structure along a raincoat seam.
According to the district court, Wong “represented to the PTO that he had ‘recently become aware’ of the Double Top-Stitch Seam (i.e., the ‘Disclosed Raincoat Seam’), see Conclusion No. 88 (Docket No. 301).” The district court concluded it was “misleading” for Wong to represent that “he” was only “recently aware” of that raincoat *1341 seam because Wong admitted that he learned of the “Disclosed Raincoat Seam” before filing his patent application and it was “the very source of his idea to use thermal adhesives in dress shirts.”
However, in the context of the amendment, “applicant’s representative” clearly referred to the patent attorney, not Wong himself. Wong is the applicant, not the applicant’s representative. Wong first told his patent prosecution attorneys in the United States about the “Disclosed Raincoat Seam” shortly before the filing of the 1996 amendment during his visit to the United States. The district court simply misunderstood this scenario. The statement it criticized as “misleading” was not misleading at all; it was entirely accurate. The statement did not represent that Wong himself had “recently become aware” of the “Disclosed Raincoat Seam,” and the examiner was not misled.
Nonetheless, the majority contends that the district court “fully grasped the attorney’s decision to be intentionally ambiguous about when Wong was aware of the prior sales.” Maj. Op. at 1334. A cursory reading of the district court’s opinion, however, reveals that the district court completely misread the 1996 amendment as referring to Wong’s knowledge of the Double Top-Stitch Seam, instead of the patent attorney’s knowledge. See Taltech, 609 F.Supp.2d at 1208 (“[I]n his 1996 amendment, he represented to the PTO that he had ‘recently become aware’ of the Double Top-Stitch Seam, a statement that was misleading because Mr. Wong was aware ... before filing his patent application”) (emphases added). The majority’s attempt to rewrite the district court’s opinion fails to correct the blatant legal errors committed below.
Next, the district court cited Praxair, Inc. v. ATMI, Inc., 543 F.3d 1306, 1313-14 (Fed.Cir.2008), for the proposition that deceptive intent can be inferred when a highly material reference is withheld without a credible explanation. See Taltech, 609 F.Supp.2d at 1209. The district court, however, failed to take into account Wong’s good faith in introducing the URS into this record. Evidence of good faith must be taken into account in determining intent to deceive. See Larson, 559 F.3d at 1341; Dayco Prods., Inc. v. Total Containment, Inc., 329 F.3d 1358, 1366 (Fed.Cir.2003).
In this case, Wong voluntarily drew the URS during his 2006 deposition. There is no other evidence of the URS in this record. This voluntary disclosure during litigation provided good faith evidence that Wong believed there was nothing material about the URS and had no intent to hide it. See Rothman v. Target, 556 F.3d 1310, 1328 (Fed.Cir.2009) (“[Jacobson] did not call the examiner’s attention to these garments as prior art, [but had he] intended to conceal the existence ... from the PTO, he never would have included [the prior art references] in his petitions filings.”); Pfizer, Inc. v. Teva Pharms. USA Inc., 518 F.3d 1353, 1367 (Fed.Cir.2008) (“Given the existence of a credible reason for the withholding, the materiality of the references standing alone is not sufficient to establish intent.”). These inferences of good faith are more reasonable than the district court’s unsupported inference of deceptive intent. See Scanner Techs., 528 F.3d at 1377 (“[T]he district court erred when it adopted an unfavorable inference ... over an equally reasonable favorable inference.”).
Moreover, the district court’s intent to deceive analysis, and the majority’s affirmance thereof, fails to follow our precedent. The majority repeatedly conflates the issues of materiality and intent. See Maj. Op. at 1332, 1333-34. This approach improperly reads the element of intent to deceive out of our inequitable conduct *1342 precedent. See Astrazeneca Pharms. LP v. Teva Pharms. USA Inc., 583 F.3d 766, 776 (Fed.Cir.2009) (“Intent to deceive is an independent element of inequitable conduct, and must be independently established by clear and convincing evidence.”). While it is true that “when the misrepresentation or withheld information is highly material, a lesser quantum of proof is needed to establish the requisite intent,” Purdue Pharma. L.P. v. Endo Pharms. Inc., 438 F.3d 1123, 1129 (Fed.Cir.2006), some quantum of proof is still necessary. See Allen Organ Co. v. Kimball Int’l, Inc., 839 F.2d 1556, 1567 (Fed.Cir.1988) (“Materiality does not presume intent, which is a separate and essential component of inequitable conduct.”).
In this case, the majority’s opinion fails to identify any quantum of proof beyond questionable materiality findings. For example, the majority infers deceptive intent from “TAL’s assertion of unequivocal untruths about a reference, simultaneous with presentation of the reference, in order to minimize the reference’s impact on the examiner.” Maj. Op. at 1334 (emphasis added). An inference of deceptive intent may be drawn from an applicant’s gross mischaracterization or unreasonable interpretation of the prior art. Young v. Lumenis, Inc., 492 F.3d 1336, 1349 (Fed. Cir.2007). However, attorneys are entitled to make reasonable arguments regarding the prior art. Rothman, 556 F.3d at 1328-29 (“While the law prohibits genuine misrepresentations of material fact, a prosecuting attorney is free to present argument in favor of patentability without fear of committing inequitable conduct.”).
The district court and majority characterize TAL’s statements that certain prior art stitches are “wholly inadequate” or “unacceptable” for dress shirts, despite evidence of their inclusion in five percent of TAL’s dress shirts, as “unequivocal untruths.” Maj. Op. at 1334. However, there is an equally reasonable inference that TAL believed that the prior art stitches are “wholly inadequate” or “unacceptable” and, therefore, incorporated these stitches into only five percent of their shirts on the market. Because TAL’s statements support two equally plausible inferences and can be viewed as reasonable attorney argument, the district court and the majority commit legal error by inferring deceptive intent in this situation. Star Scientific, 537 F.3d at 1365 (explaining that an inference of deceptive intent “must be the single most reasonable inference able to be drawn from the evidence to meet the clear and convincing standard”).
In conclusion, the majority’s opinion affirms a district court judgment that contains no supportable finding of intent, limited materiality findings, and wholly ignores evidence of good faith. In doing so, the majority reverses the road upon which this court’s inequitable conduct precedent is presently traveling. As we recently explained, “[t]he need to strictly enforce ... [an] elevated standard of proof ... is paramount because the penalty for inequitable conduct is so severe, the loss of the entire patent.... This penalty was originally applied only in cases of fraud on the Patent Office.” Id. (internal quotation marks omitted). The district court’s finding of deceptive intent is not supported by clear and convincing evidence and the inequitable conduct finding should be reversed. Id.
D.
Because I disagree with the majority’s finding of inequitable conduct, I also dissent regarding the majority’s findings of exceptionality and the award of attorney’s fees. The district court’s findings are so clearly erroneous that affirming its determinations causes this court to compound *1343 errors occasioned by the district court’s failure to follow this court’s precedent. For these reasons, I would reverse the district court, because its conclusions are legally erroneous.